

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | Criminal No. 20-cr-00071(EGS) |
| v. | : | |
| | : | |
| DARRYL GALE, | : | VIOLATION: |
| | : | 18 U.S.C. § 1343 (Wire Fraud) |
| Defendant. | : | |

## STATEMENT OF OFFENSE

Pursuant to Federal Rule of Criminal Procedure 11, the parties in this case, the United States of America and the defendant, DARRYL GALE, stipulate and agree that the following facts are true and accurate. These facts do not constitute all of the facts known to the parties concerning the charged offense; they are being submitted to demonstrate that sufficient facts exist that the defendant committed the offense to which he is pleading guilty.

### Background

At all times during the period of in or about January 2017 through in or about November 2018:

1. The Army Ten-Miler ("ATM") was a race and exposition that had been conducted annually in the District of Columbia by the U.S. Army Military District of Washington (MDW) for the prior 35 years. Each year, the race and pre-race exposition attracted over 35,000 runners and 900 teams from around the world. Participants included military, civilians, wheel chair athletes and wounded warrior athletes. ATM's mission was to support Army outreach, build morale, and promote physical fitness. ATM was a category-B Army Morale, Welfare, and Recreation (MWR) event open to the public. All race proceeds benefitted MWR programs. The ATM was organized and administered each year by a staff of employees based out of an office located at Fort Lesley J. McNair in Washington, D.C.

2.       The defendant DARRYL GALE was a civilian employee of the ATM office, hired in approximately October 2012 and working at the office through November 2018. GALE's main responsibilities included selling exposition booth rentals and managing logistics on the day of the exposition and race.

### Conduct:

3.       Beginning in or about January 2017 and continuing through in or about November 2018, within the District of Columbia and elsewhere, the defendant DARRYL GALE devised and intended to devise a scheme to defraud and to obtain money and property from ATM by means of materially false and fraudulent pretenses, representations, and promises. More specifically, GALE cashed and deposited into his own personal bank accounts certain checks, money orders, and payments through third-party payment processors, such as Square and Visa Direct. These payments were from vendors who had purchased booths at the ATM exposition. These payments were all intended for and were due to ATM as payments of fees for these booths at the ATM exposition, but GALE cashed these payments or deposited these payments into his own personal bank accounts for his own personal benefit and use. Through this scheme, GALE stole at least $124,758.21 in vendor fees that were due to the ATM.

4.       GALE was able to cash and/or deposit these payments into his own accounts by directing the vendors to either make out the payments in his name or in the name of ATM but to the "Attention of Darryl Gale."

5.       GALE made a number of material misstatements to vendors in order to induce them to make out their payments in this fashion. For example, GALE explained to some vendors that the payments should be made out to his attention because his director was allowing him to personally sell a certain number of booths as a "bonus."

6. GALE hid from his supervisors and co-workers that he was personally cashing and/or depositing these vendor payments directly into his own personal accounts.

7. For the purpose of executing and attempting to execute the above-described scheme to defraud, GALE did willfully cause to be transmitted by means of wire communication in interstate commerce, into and through the District of Columbia, certain writings, signals, and sounds, namely, while at the offices of ATM, located in the District of Columbia, GALE utilized his work e-mail account to send e-mail messages to vendors located outside the District of Columbia, in order to induce these vendors to make out payments to GALE directly or to the ATM at his attention. As described above, GALE's actions of directing vendors to make out payments in this fashion facilitated this scheme to defraud by allowing GALE to cash these payments and/or deposit them into his own accounts for his own personal use and benefit.

8. For example, on Monday, December 4, 2017, from his work e-mail account and while at the office of ATM, located in the District of Columbia, GALE sent REPRESENTATIVE ONE, the representative of ATM VENDOR ONE, located in the state of Kansas, certain e-mail messages designed to induce REPRESENTATIVE ONE to send a $3,600 payment for VENDOR ONE's booth at the 2018 race and exposition to GALE's attention. More specifically, at 1:25 p.m. on December 4, 2017, GALE sent REPRESENTATIVE ONE an email saying, "Hi [REPRESENTATIVE ONE], I just want to follow up with you on the booths and discount. Today is the last day to sign up and pay." GALE was following up on an e-mail he had sent several days earlier, in which he told REPRESENTATIVE ONE that if VENDOR ONE registered early for the 2018 race and exposition, they could get their booth for a fee of $3,600, rather than the $4,400 they had paid for their booth at the 2017 race and exposition. REPRESENTATIVE ONE responded that VENDOR ONE did want to take advantage of the early registration discount. In additional e-mails sent on December 4, 2017, GALE then directed REPRESENTATIVE ONE to fill out an application

3

and to send a payment to GALE directly. GALE told REPRESENTATIVE ONE, "I was lucky enough to get a bonus this year for getting an 'Outstanding' on my yearly review. My director is allowing 10 booths to be sold at the discounted price to give me a bonus."

9. When REPRESENTATIVE ONE submitted VENDOR ONE's registration application and payment information later in the day on December 4, 2017, GALE first tried to process this payment electronically, using a third party payment processing application called "Square," but REPRESENTATIVE ONE explained that its bank declined the transaction because "[t]hey thought I was fraudulently giving Darryl Gale 3600 to his square account. (insert eye roll @ Bank of America)." GALE then directed REPRESENTATIVE ONE to send VENDOR ONE's payment instead by check. On or about December 5, 2017, REPRESENTATIVE ONE sent via Federal Express to GALE, at the ATM offices in the District of Columbia, a check for the amount of $3,600, made payable to "Army Ten-Miler Darryl Gale," for "ATM booth fee 2018." GALE deposited this payment into his own personal bank account for his own personal use and benefit. GALE did not pass along these funds to ATM, even though ATM did give VENDOR ONE a booth at the 2018 race and exposition.

Respectfully submitted,

MICHAEL R. SHERWIN
Acting United States Attorney for the
District of Columbia

By:   /s/ Diane G. Lucas
DIANE G. LUCAS
D.C. Bar #443610
Assistant United States Attorney
Fraud & Public Corruption Section
555 Fourth Street, N.W., 5th Floor
Washington, DC 20530
(202) 252-7724
Diane.Lucas@usdoj.gov

## DEFENDANT'S ACCEPTANCE

The preceding statement is a summary, made for the purpose of providing the Court with a factual basis for my guilty plea to the charge against me. It does not include all of the facts known to me regarding this offense. I make this statement knowingly and voluntarily and because I am, in fact, guilty of the crime charged.

I have read every word of this Statement of Offense. Pursuant to Fed. R. Cr. P. 11, after consulting with my attorney, I agree and stipulate to this Statement of Offense, and declare under penalty of perjury that it is true and correct.

Date: 6/23/2020

_____
DARRYL GALE
Defendant

I have discussed this Statement of Offense with my client, Darryl Gale. I concur with his decision to stipulate to this Statement of Offense.

Date: 6/23/2020

_____
DAVID BENOWITZ
Attorney for the Defendant